IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00913-SKC-TPO

LEVENT TUNCEL, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

    v.

THOMAS SANDGAARD, and
DANIEL MOORHEAD,

      Defendants

---

Civil Action No. 1:26-cv-00714-DDD-KAS

KENT BEIDEL, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

    v.

THOMAS SANDGAARD,
ANNA LUCSOK,
DANIEL MOORHEAD,
BARRY D. MICHAELS,
MICHAEL CRESS, and
JOSHUA DISBROW,

      Defendants.

---

**LEAD PLAINTIFF'S MOTION TO CONSOLIDATE RELATED ACTIONS AND TO
VACATE THE APRIL 21, 2026 DEADLINE IN THE *BEIDEL* ACTION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     RELEVANT BACKGROUND ............................................................................... 2

        A.      *Tuncel* Action ........................................................................................... 2

        B.      *Beidel* Action ........................................................................................... 4

III.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................................ 5

IV.     THE PURPORTED APRIL 21, 2026 DEADLINE SHOULD BE VACATED .................. 7

        A.      Beidel Failed To Timely Move For Appointment As Lead Plaintiff ....................... 7

        B.      There Is No Basis To Revisit Tuncel's Appointment As Lead Plaintiff .................. 9

                1.      Beidel Has Self-Servingly Manufactured A Class Period ........................... 9

                2.      Unlike Beidel, Tuncel Has Protected The Class's Interests ....................... 11

V.      CONCLUSION .................................................................................................... 12

i

# TABLE OF AUTHORITIES

## CASES

*Akhras v. SSR Mining, Inc.*,
   2024 WL 3647704 (D. Colo. Aug. 2, 2024)..............................................................................6, 7

*City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.*,
   2013 WL 1677553 (D. Colo. Apr. 17, 2013) .................................................................................5

*Darwin v. Taylor*,
   2012 WL 5250400 (D. Colo. Oct. 23, 2012) ...........................................................................6, 8

*In re Evolv Techs. Holdings Inc. Sec. Litig.*,
   Case No. 1:24-cv-10761, ECF No. 80 (D. Mass. Dec. 13, 2024)..............................................11

*In re Niebur*,
   637 B.R. 153 (Bankr. D. Colo. 2022) ........................................................................................12

*In re Rhythms Sec. Litig.*,
   300 F. Supp. 2d 1081 (D. Colo. 2004)..................................................................................10, 11

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   629 F. Supp. 2d 1233 (D.N.M. 2009) ...............................................................................6, 8, 9

*Nakkhumpun v. Taylor*,
   782 F.3d 1142 (10th Cir. 2015) .................................................................................................10

*Thomas v. Magnachip Semiconductor Corp.*,
   2015 WL 3749784 (N.D. Cal. June 15, 2015) ..........................................................................11

*Thomas v. Metro. Life Ins. Co.*,
   2007 WL 2909352 (W.D. Okla. Oct. 5, 2007) ............................................................................8

*Ventrillo v. Paycom Software, Inc.*,
   2024 WL 1750658 (W.D. Okla. Apr. 23, 2024) .........................................................................6

*Zornberg v. NAPCO Sec. Techs., Inc.*,
   778 F. Supp. 3d 516 (E.D.N.Y. 2025) ...................................................................................8, 9

## STATUTES

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

## **RULES**

Fed. R. Civ. Proc. 23 ..................................................................................................... 7

Fed. R. Civ. Proc. 42(a) .............................................................................................. 1, 5

D.C.COLO.LCivR 42.1 ................................................................................................ 6

## **OTHER AUTHORITIES**

*Bankruptcy's Protection For Non-Debtors From Securities Fraud Litigation*,
16 Fordham J. Corp. & Fin. L. 375 (2011) ................................................................ 12

Lead Plaintiff Levent Tuncel ("Lead Plaintiff" or "Tuncel") hereby moves this Court for an order: (i) consolidating this Action (the "*Tuncel* Action") with *Beidel v. Sandgaard, et al.*, Case No. 26-cv-00714 (D. Colo.) (the "*Beidel* Action") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (ii) vacating the purported April 21, 2026 deadline to seek appointment as lead plaintiff of the *Beidel* Action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.    INTRODUCTION

Pending in this district are two securities fraud actions on behalf of investors of Zynex, Inc. ("Zynex" or the "Company") for overstating revenue and for filing false claims with insurers. The truth was slowly revealed over several months, culminating with the indictments of former executives and Zynex's admissions of securities fraud. Because these actions allege common facts against common defendants on behalf of overlapping classes, they should be consolidated. Tuncel, the Lead Plaintiff appointed by this Court pursuant to the PSLRA to represent Zynex investors, is already empowered to pursue the consolidated claims. Accordingly, the April 21, 2026 deadline in the *Beidel* Action is superfluous and should be vacated.

The *Beidel* Action, commenced nearly a year *after* Tuncel's, is nothing more than a thinly veiled attempt to circumvent the PSLRA. Plaintiff Kent Beidel's ("Beidel") transactions demonstrate that he is a member of the class alleged in Tuncel's initial complaint, but he did not file a motion to seek appointment as lead plaintiff in the *Tuncel* Action. Instead, he waited. After additional news about the extent of the fraud became public, Beidel commenced a duplicative action. In meet and confers, Beidel faults Tuncel for not flouting the Court's authority to manage

1

the litigation, claiming that Tuncel somehow acted improperly by waiting for the Court's order granting his motion for lead plaintiff.

Beidel also complains that Tuncel has not protected the class while Tuncel's lead plaintiff motion was pending. Wrong. Not only did Tuncel actively investigate the claims for his forthcoming amended complaint, including by retaining and paying an investigative firm to interview former Zynex employees, but Tuncel's counsel spent tens of thousands of dollars retaining and overseeing experienced counsel for Zynex's bankruptcy action. Tuncel's retention of bankruptcy counsel ensured that the *Tuncel* Action was not stayed, that the class's claims were not released in the bankruptcy, and that the class's proof of claim was timely submitted.

In contrast, Beidel did not even bother to file a claim in the bankruptcy. All Beidel has done is ignore the PSLRA. Beidel's counsel represented to counsel for Tuncel that they seek to "work together to protect all the prospective class members, rather than fighting among ourselves." Tuncel's Exhibit 1 at 1. This confirms that the actions are sufficiently related for consolidation and that Beidel's criticisms about Tuncel's adequacy are a pretext to secure work for Beidel's counsel.

Thus, the actions should be consolidated, and the purported deadline to seek appointment as lead plaintiff of Beidel's action should be vacated.

## II.    RELEVANT BACKGROUND

### A.    *Tuncel* Action

On March 20, 2025, Lead Plaintiff Tuncel commenced an action on behalf of investors who purchased or otherwise acquired Zynex securities between March 13, 2023 and March 11, 2025, inclusive. *See* ECF No. 1 ("*Tuncel* Complaint"). The initial complaint alleges claims under Sections 10(b) and 20(a) of the Exchange Act against Zynex and its former executives, Thomas

2

Sandgaard and Daniel Moorhead, for issuing materially false and/or misleading statements. *Id.* at ¶¶1, 14-16. The statements failed to disclose a scheme to ship products in excess of need, thereby inflating revenue and exposing the Company to liability by insurers and regulators. *Id.* at ¶7.[1]

The initial complaint alleges that the truth was revealed through a series of disclosures, including a June 4, 2024 *STAT* article about an "oversupplying scheme" to fraudulently bill insurers and a March 11, 2025 announcement that TriCare had "temporarily suspended payments" to Zynex while it reviewed the Company's prior claims. ECF No. 1, ¶¶30-31, 35-36. When Tuncel filed his initial complaint on March 20, 2025, TriCare's investigation was ongoing. *See id.* at ¶35.

That same day, Tuncel published a notice informing investors of his action, thereby setting a May 19, 2025 deadline to seek appointment as lead plaintiff pursuant to the PSLRA. Tuncel's Exhibit 2. Only Tuncel filed a timely motion. ECF No. 11. No party or interested investor opposed his appointment. *See* ECF No. 15. On February 4, 2026, the Court appointed Tuncel as lead plaintiff and approved his selection of counsel. ECF No. 36. Pursuant to the Court's Order, the parties will file a proposed schedule for the amended complaint and defendants' response thereto once Defendant Sandgaard has secured counsel. *See* ECF Nos. 9-10, 38, 41.

After Zynex filed for bankruptcy and while Tuncel's lead plaintiff motion was pending, Tuncel secured experienced bankruptcy counsel to protect his and the class's interests. Tuncel ensured that the securities fraud claims were not released by the bankruptcy, prevented this action from being stayed pending confirmation of the bankruptcy plan, and filed a timely proof of claim.

---

[1] Tuncel voluntarily dismissed Zynex after it sought bankruptcy protection. ECF Nos. 31-32, 34.

**B.    *Beidel* Action**

On February 3, 2026, counsel for Beidel sent counsel for Tuncel a letter claiming to represent an unnamed investor with "an estimated $500,000 in losses." Tuncel's Exhibit 3. Among other things, the letter claimed that "the Class Period should be years longer than the Class Period pled by Mr. Tuncel" and that "it is doubtful that [Tuncel] should be" appointed lead plaintiff "given his lack of attention to this matter." *Id.* at 2. It was accompanied by a "77 page Complaint in Intervention." *Id.* at 2; *see also* Tuncel's Exhibit 4.[2] Lead Plaintiff responded to counsel for Beidel, reminding them that the statutory deadline to seek appointment as lead plaintiff had expired and that Tuncel had faithfully acted on behalf of investors. Tuncel's Exhibit 5.

On February 20, 2026, Beidel commenced suit on behalf of investors who purchased or otherwise acquired Zynex securities between February 25, 2021 and December 15, 2025, inclusive. Tuncel's Exhibit 6 ("*Beidel* Complaint"), at ¶1. It alleges violations of Sections 10(b) and 20(a) against former executives (Sandgaard, Moorhead, and Anna Lucsok) and violations of Section 10(b)-5(b)-(c) against directors Barry D. Michaels, Michael Cress, and Joshua Disbrow. *Id.* at ¶¶25-31, 142-167. The same day, Beidel announced the pendency of his action, stating that investors may seek appointment as lead plaintiff by April 21, 2026. Tuncel's Exhibit 7.

Like the *Tuncel* Complaint, the *Beidel* Complaint alleges that Zynex and its insiders had employed a scheme to ship products in excess of need, thereby inflating revenue and exposing the Company to liability by insurers and regulators. Tuncel's Exhibit 6, ¶18. He also alleges that the

---

[2] Counsel for Beidel unilaterally asserted that the proposed complaint was provided on a confidential basis. Tuncel did not agree to keep these pre-filing discussions confidential.

named director defendants schemed to inflate "the Company's stock price through stock repurchase plans," including repurchasing shares from Mr. Sandgaard. *Id.*

Like the *Tuncel* Complaint, the *Beidel* Complaint alleges that the truth was revealed through a series of disclosures, including the June 4, 2024 and March 11, 2025 disclosures alleged in Tuncel's initial complaint. *Id.* at ¶¶99-100, 112-113. In addition, Beidel alleges events that occurred after Tuncel filed his initial complaint. *Id.* at ¶¶114-121.

## III.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation will avoid unnecessary cost, delay, and overlap in adjudication. *See* Fed. R. Civ. P. 42(a). Both actions concern Exchange Act violations by Zynex's former officers for the issuance of false and/or misleading statements regarding billing practices and inflated revenue. ECF No. 1, ¶¶7, 14-16; Tuncel's Exhibit 6, ¶¶18, 25-31. Beidel's claims against certain directors is based on the same allegedly wrongful course of conduct. Tuncel's Exhibit 6, ¶46 (alleging that the directors "not only failed to prevent the fraud, but they also helped fuel it and conceal it"). Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation is appropriate. *See City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.*, 2013 WL 1677553, at *2 (D. Colo. Apr. 17, 2013) (consolidating actions seeking "to answer the same question: whether defendants made materially false and misleading statements"). Defendant Moorhead does not oppose consolidation.

Beidel argues that "any motion for consolidation should be made at the conclusion of the new notice period applying to [his] action," *i.e.* after April 21, 2026. *See* Tuncel's Exhibit 1 at 1. That is contrary to the federal statute, which requires the Court to decide consolidation first. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (if "any party has sought to consolidate" substantially similar

5

actions, "the court shall not make the determination required by clause (i) [i.e., lead plaintiff] until after the decision on the motion to consolidate is rendered"); *see also* D.C.COLO.LCivR 42.1 ("A motion to consolidate shall be given priority."). Beidel has not articulated the basis for his opposition to consolidation, yet he confirms that the two actions involve overlapping facts and claims. *See* Tuncel's Exhibit 1 at 1 (asking Tuncel's counsel to "work together to protect all the prospective class members, rather than fighting among ourselves").

Beidel seemingly claims consolidation is inappropriate because he has alleged a longer class period than in Tuncel's initial complaint and he has alleged Exchange Act claims against directors. *See* Tuncel's Exhibit 1 at 1. He is wrong on both counts. *See Akhras v. SSR Mining, Inc.*, 2024 WL 3647704, at *3 (D. Colo. Aug. 2, 2024) (consolidating actions that were "not identical" in class period or named defendants), *report and recommendation adopted by* 2024 WL 4202136 (D. Colo. Aug. 19, 2024); *Ventrillo v. Paycom Software, Inc.*, 2024 WL 1750658, at *2 (W.D. Okla. Apr. 23, 2024) ("The difference in class periods, however, does not render consolidation inappropriate."); *Darwin v. Taylor*, 2012 WL 5250400, at *2 (D. Colo. Oct. 23, 2012) (consolidating actions that asserted violations of the Exchange Act "based on the same allegedly wrongful course of conduct, by officers and/or directors of Delta").

Regardless, Lead Plaintiff has the authority to—and intends to—file an amended complaint that includes events that occurred after he filed his initial complaint and the facts gleaned after the commencement of his first-filed action. *See, e.g.*, *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1241-42 (D.N.M. 2009) (allowing lead plaintiff to expand class period, add new statutory claims, and add several new defendants). Therefore, the *Tuncel* and *Beidel* Actions should be consolidated.

6

## IV.    THE PURPORTED APRIL 21, 2026 DEADLINE SHOULD BE VACATED

The PSLRA sets forth a procedure for the appointment of lead plaintiff and approval of lead counsel in securities class actions. After commencing the first suit, the plaintiff must publish in a "widely circulated national business-oriented publication or wire service" a notice of the pendency of the action, claims, and class period, which triggers a 60-day period within which eligible investors seeking to represent the class's interests must file a motion to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). After investors have filed their motions, there is a rebuttable presumption that the "most adequate plaintiff" to be appointed lead plaintiff is the investor who (1) filed the complaint or a timely motion, (2) has the largest financial interest, and (3) otherwise satisfies the requirements of Fed. R. Civ. Proc. 23. 15 U.S.C. § 78u-4(a)(3)(B). That presumption may be rebutted only upon "proof" that the most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

That statutory process has already been followed, resulting in the appointment of Tuncel as lead plaintiff. *See* ECF Nos. 11, 15, 36. There is no need (or statutory mandate) to select a second lead plaintiff. The April 21, 2026 deadline in the *Beidel* Action only serves to delay adjudication on the merits. Such delay is not justified, and the deadline should be vacated.

### A.    Beidel Failed To Timely Move For Appointment As Lead Plaintiff

Tuncel published notice of his action through *Business Wire*, informing putative class members that they may seek appointment as lead plaintiff within 60 days, *i.e.* by May 19, 2025. Tuncel's Exhibit 2; *see also* 15 U.S.C. § 78u-4(a)(3)(A)(i). That provided "satisfactory notice." *Akhras,* 2024 WL 3647704, at *4 (finding *Business Wire* press release compliant with statute).

7

Indeed, Beidel's counsel also issued press releases, confirming they had adequate notice of the pendency of the action and of the May 19, 2025 deadline. *See* Tuncel's Exhibits 8 & 9.

Beidel did not file a lead plaintiff motion in the *Tuncel* Action despite the fact that the majority of his transactions (and his corresponding losses) are in the class period alleged in the *Tuncel* Complaint. *See* Tuncel's Exhibit 6 at 80-84 (Beidel's certification). Beidel had the opportunity under the PSLRA to seek appointment as lead plaintiff in the *Tuncel* Action, but declined (or at least did not diligently step forward in a timely manner). *See Darwin*, 2012 WL 5250400, at \*5 (declining to consider investor who submitted "trading information and corresponding losses introduced for the first time after the PSLRA's 60–day deadline expired").

Beidel cannot cure his neglect by commencing a new related action after a lead plaintiff is already appointed. That is contrary to the statutory process and would defeat the purpose of PSLRA. Indeed, if new news allowed class members to file new complaints and trigger new PSLRA deadlines, the process could be infinite. *Thornburg Mortg.*, 629 F. Supp. 2d at 1239 ("Notably, the statute makes no mention of 'complaints,' of 'a complaint,' of 'subsequent complaints,' of 'amendments,' or any other similar language that might evidence an intent that the notice provision would come into play multiple times in a single lawsuit."); *Thomas v. Metro. Life Ins. Co.*, 2007 WL 2909352, at \*2 (W.D. Okla. Oct. 5, 2007) ("any fairness" gained from notice of new non-PSLRA claims "would be extremely limited and marginal at best"); *see also Zornberg v. NAPCO Sec. Techs., Inc.*, 778 F. Supp. 3d 516, 530 (E.D.N.Y. 2025) (new Securities Act claims

8

"share the same underlying inventory misstatement facts" as earlier Exchange Act claims, so "no potential lead plaintiffs of the new claims would have disregarded the first notice").[3]

### B.    There Is No Basis To Revisit Tuncel's Appointment As Lead Plaintiff

Beidel has argued that Tuncel has failed to protect the class because he did not amend the complaint to plead the factual developments after the commencement of the *Tuncel* Action. Setting aside the Court had directed the progress of litigation after its order appointing lead plaintiff including filing an amended complaint, Beidel's arguments are not persuasive.

### 1.    Beidel Has Self-Servingly Manufactured A Class Period

Instead of filing a timely motion in the *Tuncel* Action, Beidel has commenced a "new" lawsuit and published a new deadline to solicit lead plaintiff motions, which only serves to confuse investors. There is ample reason to question his class period, including indications that it was crafted to secure a leadership position for Beidel's counsel rather than to allege strong claims.

Prior to filing the *Beidel* Action, counsel for Beidel approached Tuncel with a proposed complaint, alleging a putative class of investors who acquired Zynex securities between February 25, 2021 to July 31, 2025, inclusive. Tuncel's Exhibit 4 at ¶1. In this pre-filing discussion, counsel for Beidel repeatedly claimed that the fraud was fully revealed in July 2025. For example, the letter states that the "fraud began as early as 2017 and did not conclude until admissions were made of regulatory violations by the Company on July 25, 2025." Tuncel's Exhibit 3 at 1. The proposed complaint stated "on July 31, 2025, the ***full extent*** of Defendants' misdeeds were revealed when

---

[3] "[T]he addition of new defendants does not require republication [of notice] under the PSLRA" either. *Thornburg Mortg.*, 629 F. Supp. 2d at 1240 (explaining that "the most determinative fact in a notice is the company at the heart of the complaint and the general outline of the alleged misconduct").

the Company acknowledged that it had not been in compliance with industry regulations," Tuncel's Exhibit 4 at ¶10 (emphasis added).

Two weeks later, Beidel filed his complaint—now ending the class period on December 15, 2025. Tuncel's Exhibit 6, ¶1. The *Tuncel* Complaint ends the class period on March 11, 2025, and Beidel does not allege that any statement on or after that date is false or misleading. *See id.*, ¶¶112-122; *id.* at ¶111 (alleging reasons why *earlier* statements were misleading). To the extent Beidel claims that the July 31, 2025 Form 10-Q created "false hope," Beidel does not plead any fact to support his allegation that Zynex lacked "good evidence" to reinstate payments with TriCare. *Id.* at ¶115. In fact, Beidel does not plead anything about TriCare after July 31, 2025. *See id.* He alleges that Zynex's bankruptcy (which is the announcement that ends Beidel's class period) was a materialization of a "risk created by the wrongful acts" previously described. *Id.* at ¶120. However, that is not sufficient to plead loss causation, a prima facie element of his claims. *See generally Nakkhumpun v. Taylor*, 782 F.3d 1142, 1154 (10th Cir. 2015) ("Under a theory of materialization of a *concealed* risk, a plaintiff alleges loss causation by showing that the defendant's misrepresentation concealed a risk that caused a loss for the plaintiff when the risk materialized.") (emphasis added). Plainly, Beidel's expanded class period is manufactured to respond to Tuncel's arguments that Beidel has not been diligent. *See* Tuncel's Exhibit 5 at 2.

Even if the class period alleged in the *Beidel* Complaint is appropriate, Tuncel can plead the requisite facts in his forthcoming amended complaint. The longer class period still centers on the same core facts as the *Tuncel* Complaint. *Compare Tuncel* Complaint, ¶7, *with* Tuncel's Exhibit 6, ¶18 (alleging the substantially the same theory of wrongdoing); *see also In re Rhythms Sec. Litig.*, 300 F. Supp. 2d 1081, 1085 (D. Colo. 2004) (plaintiff may represent class claims despite

10

"dissimilarity of misrepresentations" because the statements "established a common course of conduct by defendants"). The events that post-date the *Tuncel* Complaint are further revelations of the alleged fraudulent billing practices, and it is not a basis to revisit the month-old order appointing Tuncel as lead plaintiff. *In re Evolv Techs. Holdings Inc. Sec. Litig.*, Case No. 1:24-cv-10761, ECF No. 80 (D. Mass. Dec. 13, 2024) (denying request to reopen notice period where restatement of revenue was a "continued revelation of the fraud" of product efficacy misrepresentations); *Thomas v. Magnachip Semiconductor Corp.*, 2015 WL 3749784, at *4-5 (N.D. Cal. June 15, 2015) (declining to reopen notice period where amended complaint that added new claims, added new defendants, and expanded the class period "still centers on the same factual scenario" as in the earlier complaint).

### 2. Unlike Beidel, Tuncel Has Protected The Class's Interests

Despite Beidel's arguments that Tuncel sat idle waiting for the Court's order on his lead plaintiff motion, Tuncel acted on behalf of the putative class. Even before he was appointed as lead plaintiff, Tuncel diligently protected the class's interests. He filed a complaint shortly after one of the revelations of Zynex's false claims, *i.e.*, in March 2025 when an insurer refused payments pending an investigation into prior claims. He retained investigators to interview former employees with relevant knowledge to substantiate the claims in his forthcoming amended complaint.

Tuncel also engaged counsel specializing in bankruptcy law to review and monitor Zynex's bankruptcy proceedings, which has benefited the class. The company's bankruptcy proceedings are often used to shield non-debtors (like officers and directors) by extending the automatic stay to non-debtors, inhibiting discovery, or releasing the non-debtors from securities fraud liability through the debtor's reorganization plan. *See generally* John M. Wunderlich, *Bankruptcy's*

11

*Protection For Non-Debtors From Securities Fraud Litigation*, 16 Fordham J. Corp. & Fin. L. 375, 391-408, 422-428 (2011). Tuncel prevented Zynex's bankruptcy proceedings from delaying adjudication of this action. *See* Tuncel's Exhibit 10 at ¶5; *see also* ECF No. 33. He ensured that the bankruptcy proceedings did not release the class's claims. He filed a proof of claim to preserve the ability to seek recognition of the claim as a class claim against the debtor, Zynex. *In re Niebur*, 637 B.R. 153, 158 (Bankr. D. Colo. 2022) ("The timely filing of a proof of claim is important because . . . a trustee may only make distributions under a confirmed plan to creditors whose claims have been allowed.").

Beidel did none of these things. A review of the claims website shows that Beidel has not submitted a proof of claim in the bankruptcy. Thus, were Tuncel's appointment as lead plaintiff vacated, the class's interests' could be jeopardized. *See, e.g.*, *In re Niebur*, 637 B.R. at 160-168 (denying untimely claim as to corporate-debtor despite timely claim filed as to individual debtors, even where debtors did not dispute the claim).

*    *    *

For the foregoing reasons, the Court should not revisit the appointment of Tuncel as lead plaintiff. Therefore, the Court should vacate the April 21, 2026 deadline to file lead plaintiff motions in the *Beidel* Action.

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully request that the Court grant his motion and enter an Order (a) consolidating the *Tuncel* and *Beidel* Actions; (b) vacating the April 21, 2026 deadline to seek appointment as lead plaintiff and approval of counsel; and (c) granting such other relief as the Court may deem just and proper.

12

Dated: March 3, 2026                                    /s/ Pavithra Rajesh
                                                       **GLANCY     PRONGAY     WOLKE     &
                                                            ROTTER LLP**
                                                       Robert V. Prongay
                                                       Casey E. Sadler
                                                       Pavithra Rajesh
                                                       1925 Century Park East, Suite 2100
                                                       Los Angeles, CA 90067
                                                       Telephone: (310) 201-9150
                                                       Facsimile: (310) 201-9160

                                                       *Counsel for Lead Plaintiff Levent Tuncel and
                                                       Lead Counsel for the Putative Class*

**CERTIFICATE OF CONFERENCE PURSUANT TO D.C.COLO.LCivR 7.1(a)**

I hereby certify that, prior to filing this motion, I met and conferred with counsel for Plaintiff Kent Beidel and counsel for Defendant Daniel Moorhead regarding the relief sought by this motion. Plaintiff Kent Beidel opposes the motion, as discussed herein. Defendant Daniel Moorhead does not oppose consolidation and takes no position on the appointment of lead plaintiff.

I was unable to confer with Defendants Barry D. Michaels, Michael Cress, and Joshua Disbrow because they are not parties to the *Tuncel* Action, they do not appear to have been served in the *Beidel* Action, and therefore I am not aware of which counsel, if any, represents them in this matter. I was unable to confer with Defendant Thomas Sandgaard because his counsel is still finalizing representation.

*/s/ Pavithra Rajesh*
Pavithra Rajesh

**AI CERTIFICATION**

I hereby certify that no portion of this filing was drafted by AI.

*/s/ Pavithra Rajesh*
Pavithra Rajesh

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document and accompanying declaration, exhibits, and proposed order were filed with this Court on March 3, 2026 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing. I further certify that I caused these documents to be sent by Electronic Mail to counsel for Plaintiff Kent Beidel at the electronic address listed below on March 3, 2026.

Thomas J. McKenna
Gregory M. Egleston
Christopher M. Brain
**Gainey McKenna & Egleston**
260 Madison Ave., 22nd Floor
New York, NY 10016
tjmckenna@gme-law.com
gegleston@gme-law.com
cbrain@gme-law.com

Laurence D. Paskowitz
**The Paskowitz Law Firm, P.C.**
The Contour
97-45 Queens Blvd., Suite 1202
Rego Park, NY 11374
lpaskowitz@pasklaw.com

Beth A. Keller
**Law Offices of Beth A. Keller, P.C.**
118 North Bedford Road, Suite 100
Mount Kisco, NY 10549
bkeller@keller-lawfirm.com

Lesley Portnoy
**Portnoy Law Firm**
28310 Roadside Drive, Suite 244
Agoura Hills, CA 91301
lesley@portnoylaw.com

/s/ Pavithra Rajesh
Pavithra Rajesh